OPINION OF THE COURT
John B. Riordan, J.
This is a proceeding to construe and reform the last will and testament of Rose Rappaport. Rose died on August 31, 2006 survived by four adult children: Irwin Rappaport, who is the petitioner herein, Karen Brecher, Joel Rappaport and Susan Rappaport, who is disabled. The will was admitted to probate by decree dated March 7, 2007, and Irwin, Joel and Karen were appointed as the coexecutors of the estate. Joel died in December 2007. The court has appointed Ernest T. Bartol as guardian ad litem to represent Susan’s interests in this proceeding. Jurisdiction is complete. The guardian ad litem has filed his report, and the matter has been submitted for decision.
Article fourth of the will reads as follows:
“I give, bequeath and devise to my Trustees, hereinafter named, an amount equal to the Unified Credit Equivalent available at the time of my death. My Trustees shall hold such amount in Trust, as a separate Trust Fund to invest and reinvest the same[,] collect the income therefrom to pay all the net income to my daughter, susan rappaport, during her lifetime in quarterly or more frequent installments, together with so much of the principal thereof as my Trustees shall at any time or from time to time, in their absolute discretion deem advisable to my daughter’s health, support and maintenance. Upon the death of my said daughter, susan rappaport, my Trustees shall pay and distribute the principal then remaining together with any accrued income to such of my issue then living in equal shares, per stirpes. My Trustees shall pay all of the income of said Trust to my daughter, susan rappaport[,] not less than quarterly during her lifetime. Upon the death of my daughter, susan rappaport, my Trustees shall distribute the then principal, together with any accrued income of this Trust to my children, joel rappaport, irwin e. rappaport and karen brecher, share and share alike, per stirpes.”
*921 In article ninth, the decedent nominated Joel, Irwin and Karen as executors; however, nowhere in the will did the decedent nominate trustees for the article fourth trust. In the petition, Irwin asks that the will be reformed to (1) name Joel, Irwin and Karen as trustees of the article fourth trust, and (2) convert the article fourth trust to a third-party supplemental needs trust the terms of which are set forth in the proposed supplemental needs trust submitted with the petition, with Joel, Irwin and Karen as remainder persons.
Karen has filed a document entitled “Response to Executor/ Fiduciary Petition for Construction of Will” in which she terms herself “petitioner.” In the response, she requests an order (1) directing Irwin to provide Karen with an estate accounting; (2) appointing Karen as Susan’s legal guardian; (3) determining whether Irwin, as coexecutor, is in conflict with the estate and, if so, removing him as coexecutor; and (4) granting attorney’s fees to Karen. None of the relief Karen requests is the subject of the instant proceeding and will not be entertained in this proceeding. The court notes that the question of whether Susan needs a guardian of her person or property is the subject of a Mental Hygiene Law article 81 proceeding in Supreme Court, Nassau County, brought by Irwin, in which Mr. Bartol was appointed as special counsel for Susan.
Mr. Bartol has submitted a report in which he informs the court that after an article 81 hearing on April 23, 2008, the Honorable Joel K. Asarch, J.S.C., rendered a decision wherein he concluded that Susan has certain deficiencies and limitations and further concluded that Irwin would be appointed as Susan’s guardian with certain limited powers, which Mr. Bartol does not enumerate. As of the date of Mr. Bartol’s report, an order appointing Irwin as Susan’s guardian had not been signed by Judge Asarch.
In connection with the reformation proceeding, Mr. Bartol refers to the animosity between Irwin and Karen. In that regard, Mr. Bartol recommends that the court reform the will to include the appointment of Irwin as trustee of the article fourth trust. Mr. Bartol states that this is consistent with Judge Asarch’s determination in the article 81 proceeding, that Susan specifically requested that Irwin be appointed as her article 81 guardian and that Karen consented to Irwin’s appointment in that proceeding. Further, Mr. Bartol refers to an affirmation of Karen’s attorney submitted in the article 81 proceeding wherein her attorney states that Karen is ill and wishes to “end the *922 squabbling with [Irwin].” Mr. Bartol also states in his report that he recommends the reformation of the decedent’s will to reform the article fourth trust to create a supplemental needs trust. Mr. Bartol states that he has reviewed the proposed supplemental needs trust and concludes that it conforms to the requirements of EPTL 7-1.12.
Although the New York State Department of Health (DOH) has no current claim or pecuniary interest, it was cited and appeared in this proceeding by its attorney, the Attorney General of New York. DOH consents to having the will reformed to name trustees for the article fourth trust, but takes no position as to who should be named as trustees. DOH opposes Irwin’s request to reform the article fourth trust into a supplemental needs trust. DOH asserts that reforming the trust to create a supplemental needs trust is not necessary or appropriate given the language the decedent used in the will to pay Susan all of the net annual income of the trust without any trustee discretion or interference about how the money is to be used. DOH points out that the will postdates the enactment in 1993 of EPTL 7-1.12, the statute that authorizes the establishment of supplemental needs trusts for individuals with severe and chronic or persistent disabilities. In opposing the establishment of a supplemental needs trust, DOH points to the decedent’s direction to the trustees to provide Susan with the “lifestyle that would provide for her the standard of living which she had enjoyed during [the decedent’s] lifetime. I direct that my Trustees provide her with the proper residence, a full time companion, all her physical needs, recreation, support, maintenance and welfare to the fullest entend [szc] possible.” DOH acknowledges that the payment of income from the trust to Susan will likely disqualify her from some governmental benefits. DOH argues that it is for the court or for a guardian of Susan’s property to determine whether Susan’s best interests are served by receiving the income payments from the article fourth trust or whether she requires the creation of a self-settled supplemental needs trust.
In support of its position, DOH relies upon Matter of Rubin (4 Misc 3d 634 [Sur Ct, NY County 2004]). In Rubin, a decision that consolidated two proceedings, the court refused to reform various inter vivos trusts created for two disabled individuals. The court determined that reformation is available to correct mistakes, but “not ... to change the terms of a trust to effectuate what the settlor would have done had the settlor *923 foreseen a change of circumstances that has occurred” (id. at 638 [citation omitted]). There is no mention in Rubin of whether either settlor included language in the trusts to the effect that the assets be used to supplement, rather than supplant, government benefits.
Courts are generally loathe to reform testamentary instruments and, as a rule, will not, unless reformation effectuates the testator’s intent (see Matter of Snide, 52 NY2d 193 [1981]). When construing a will, the testator’s intent is to be gleaned from a sympathetic reading of the instrument in its entirety and not from a single word or phrase (Matter of Fabbri, 2 NY2d 236 [1957]). It is of paramount importance that the testator’s actual purpose be determined and effectuated to the extent it comports with the law and public policy (id. at 240). In Matter of Escher (94 Misc 2d 952 [Sur Ct, Bronx County 1978], affd 75 AD2d 531 [1st Dept 1980], affd 52 NY2d 1006 [1981]), the trustee of a discretionary trust established under a will brought a proceeding to judicially settle his account. The New York State Department of Mental Hygiene filed objections to the disallowance by the trustee of its claim for reimbursement from the trust for the cost of the care of the trust’s lifetime beneficiary, the testator’s daughter, who had been a patient at the Rockland Psychiatric Center since 1947. Surrogate’s Court, Bronx County, dismissed the objections, finding that “under the terms of the trust at issue, it is not an abuse of discretion for the trustee to decline to invade corpus for the purpose advocated by object-ant” (94 Misc 2d at 961). In reaching its conclusion, the court relied on the language of the testator’s will and codicil, which the court found evidenced the testator’s knowledge of his daughter’s disabilities and his apparent intent to provide for her ongoing needs during her lifetime within the framework of a continuing trust (id. at 957). The court also reasoned that in recent years the view of public assistance had changed from that of a “gift” to a “right” and that the stigma attached to it had, for the most part, disappeared, particularly with respect to programs
“designed to meet the astronomical cost of illness or institutional care of any sort . . .
“It is divorced from the realities of life to presume that if testator were aware of the facts as they now exist, he would desire to pay the immense cost for his daughter’s care in preference to having society share this burden” (id. at 959).
*924 When the case reached the Court of Appeals, it held that, as a matter of law, the trustee did not abuse her discretion by refusing to invade the trust’s corpus to reimburse the Department of Mental Hygiene (Matter of Escher, 52 NY2d 1006 [1981]).
Enacted in 1993, EPTL 7-1.12, in essence, codified the holding in Escher. The statute authorizes the creation of third-party, testamentary supplemental needs trusts when the following requirements are satisfied: (1) the person for whose benefit the trust is established suffers from a “severe and chronic or persistent disability”; (2) the trust evidences the intent that the assets be used to supplement, not supplant, government benefits; (3) the trust prohibits the trustee from using assets in any way that may jeopardize the beneficiary’s entitlement to government benefits or assistance; and (4) the beneficiary does not have the power to assign, encumber, direct, distribute or authorize distribution of trust assets (EPTL 7-1.12 [a] [5] [i]-[iv]). The policy of the State of New York is to encourage the creation of supplemental needs trusts to enhance the quality of a disabled individual’s life without jeopardizing Medicaid eligibility (Matter of Newman, 18 Misc 3d 1118[A], 2008 NY Slip Op 50127[U], *2 [Sur Ct, Bronx County 2008]; Matter of Kamp, 7 Misc 3d 615, 622 [Sur Ct, Broome County 2005]).
Courts have shown a willingness to reform wills to obtain the benefits of a supplemental needs trust where the testator’s intent to supplement, rather than supplant, government benefits is evident from the language of the testamentary instrument (see e.g. Matter of Newman, 18 Misc 3d 1118[A], 2008 NY Slip Op 50127[U] [Sur Ct, Bronx County 2008]; Matter of DeRosa, NYLJ, Apr. 20, 2006, at 30, col 2 [Sur Ct, Kings County]; Matter of Kamp, 7 Misc 3d 615 [Sur Ct, Broome County 2005]; Matter of Ciraolo, NYLJ, Feb. 9, 2001, at 31, col 4 [Sur Ct, Kings County]; but see Matter of Rubin, 4 Misc 3d 634 [Sur Ct, NY County 2004]) and such reformation would not change the testator’s dispositive plan (see e.g. Matter of Choate, 141 Misc 2d 489 [Sur Ct, NY County 1988]). In deciding whether to reform a testamentary trust to create a supplemental needs trust, the
“courts have not focused upon whether the decedent’s will was executed before or after either the decision in Matter of Escher (94 Misc 2d at 952) or the enactment of EPTL 7-1.12 (see Matter of Longtime, 15 Misc 3d 1106[A] [2007] [the will was executed 12 years after the enactment of EPTL 7-1.12]; *925 Matter of Hyman, 14 Misc 3d at 1232[A] [the will was executed the year after Matter of Escher, 94 Misc 2d at 952]). Similarly, the courts have permitted testamentary trusts to be reformed to create a [non-self-settled supplemental needs trust] notwithstanding the fact that the trusts have been operative for many years prior to the reformation application (see Matter of Kamp, 7 Misc 3d [615], and Matter of Hyman, 14 Misc 3d at 1232[A], where the respective testamentary trust was in existence for more than 20 years prior to its reformation).” (Matter of Newman, 18 Misc 3d 1118[A], 2008 NY Slip Op 50127[U], *2 [Sur Ct, Bronx County 2008].)
The proposed reformation of the article fourth trust for Susan’s benefit meets the criteria first enunciated in Escher and later in EPTL 7-1.12. Susan, the income beneficiary, suffers from chronic disabilities. The will evidences the decedent’s intention that the trust’s assets be used to supplement, not supplant, government benefits. In that regard, it is significant that article eighth of the will directs that the trust “shall not in any way jeopardize any monies that she is now receiving from any government agency or that she will be entitled to receive after my death.” Susan has no power to dispose of any trust assets. The requested reformation does not alter decedent’s testamentary plan, and the court finds the requested reformation to be in Susan’s best interests. There is no evidence that Susan is currently receiving or has received governmental benefits. Under the facts of this proceeding, the court declines to follow the restrictive analysis set forth in Matter of Rubin (4 Misc 3d 634 [2004]).
Accordingly, the court adopts the guardian ad litem’s recommendations to construe and reform the decedent’s will to (1) appoint Irwin as the trustee of the article fourth trust, and (2) create a third-party supplemental needs trust in conformance with EPTL 7-1.12. The court has reviewed the proposed supplemental needs trust and is satisfied that it conforms to EPTL 7-1.12.